COMMONWEALTH vs. PAUL J. SANDS.

Middlesex. October 8, 1996. - February 3, 1997.

Present: WILKINS, C.J., ABRAMS, GREANEY, & FRIED, JJ.

*Evidence,* Scientific test, Expert opinion, Field sobriety test, Admissions and confessions. *Intoxication. Practice, Criminal,* Admissions and confessions. *Motor Vehicle,* Operating under the influence.

At the trial of a complaint alleging the defendant operated a motor vehicle while under the influence of alcohol the judge erred in admitting the results of a Horizontal Gaze Nystagmus (HGN) field sobriety test without requiring the Commonwealth to lay an evidentiary foundation for the admission of scientific evidence, inasmuch as the HGN test relies on an underlying scientific proposition requiring expert testimony. [185-189]

At the trial of a complaint for operation of a motor vehicle while under the influence of alcohol, the defendant's voluntary admission at the time he was booked that he was intoxicated beyond the legal limit was properly admitted in evidence. [189]

COMPLAINT received and sworn to in the Malden Division of the District Court Department on March 28, 1994.

On transfer to the jury session of that division, the case was tried before *Jonathan Brant,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Barbra I. Black* (*Daniel K. Sherwood* with her) for the defendant.

*Stephen C. Hoctor,* Assistant District Attorney, for the Commonwealth.

ABRAMS, J. A District Court jury of six convicted the defendant, Paul J. Sands, of driving an automobile while under the influence of alcohol. See G. L. c. 90, § 24 (1) (*e*). The defendant appealed alleging error in (1) the admission of the results of the Horizontal Gaze Nystagmus (HGN) sobriety field test and (2) the admission of a statement made by him during booking. We transferred the case to this court on our own motion. We reverse and order a new trial.

1. *Facts.* We summarize the facts of this case as the jury could have found them. In the early morning of March 28, 1994, Massachusetts State Trooper Robert Murphy stopped the defendant who was driving a pickup truck on Route 99 in Malden. Trooper Murphy had seen the truck driving at about ten miles an hour in a thirty-five miles per hour speed zone, and swerving three times across the double yellow line, partially into the opposite lane. Trooper Murphy stopped the defendant's truck and thereafter conducted four field sobriety tests, including the HGN test, the nine-step walk and turn test, the alphabet test and the one-legged stand. The defendant failed all four tests. Trooper Murphy then arrested the defendant, and brought him to the State police barracks. There, during booking, he asked the defendant if he would take a breathalyzer test. In response, the defendant answered, "I'm not drunk, but I'm over," and did not take the test.

2. *The HGN test.* The defendant argues that the trial judge erred by admitting the results of the HGN test in evidence. He argues that the judge first should have required the Commonwealth to lay an evidentiary foundation for the admission of scientific evidence. We agree.

In *Commonwealth* v. *Fatalo,* 346 Mass. 266, 269 (1963), we adopted the "general acceptance" test of *Frye* v. *United States,* 293 F. 1013, 1014 (D.C. Cir. 1923), which required that courts consider "whether the community of scientists involved generally accepts the theory or process" underlying the evidence to be introduced. Subsequently, in *Commonwealth* v. *Lanigan,* 419 Mass. 15, 26 (1994), we also adopted, in part, the reasoning of *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993), and held that "a proponent of scientific opinion evidence may demonstrate the reliability or validity of the underlying scientific theory or process by some other means, that is, without establishing general acceptance," because the touchstone of admissibility is reliability, and not necessarily general acceptance within the scientific community. *Lanigan, supra* at 24, 26, and cases cited. We also stated that, "[w]e suspect that general acceptance in the relevant scientific community will continue to be the significant, and often the only, issue." *Id.* at 26. Thus, a party seeking to introduce scientific evidence may lay a foundation either by showing that the underlying scientific theory is generally accepted within the relevant scientific community, or by show-

ing that the theory is reliable or valid through other means.[1] See *id*.

Expert testimony on the scientific theory is needed if the subject of expert testimony is beyond the common knowledge or understanding of the lay juror. If jurors can evaluate an expert's testimony with common sense and experience and can understand the underlying methods or theories of the testimony, then the expert's qualifications and the logical basis of the testimony can be effectively tested through cross-examination and rebuttal evidence.

The HGN test offered by the Commonwealth measures the onset of the phenomenon known as nystagmus. Nystagmus is "[a]n abnormal and involuntary movement of the eyeballs from side to side or up and down, but usually from side to side. It is a sign of a number of ailments, usually of a nervous origin. It may, however, be due to simple fatigue of the eye muscles, as when watching a tennis game." *State* v. *Merritt*, 36 Conn. App. 76, 84 (1994), quoting 3 J. Schmidt, Attorneys' Dictionary of Medicine (1993).

The HGN test consists of three parts which measure various aspects of these involuntary movements which cause nystagmus. In the first part, the "smooth pursuit" test, the officer asks the defendant to first look straight ahead, focusing on an object, such as a pen, which the officer then moves back and forth horizontally. As the driver follows the path of the pen, the officer looks to see whether the eyes move smoothly from side to side, or whether they exhibit nystagmus, characterized by an unsteady, bouncing movement. In the second part, the "maximum deviation" test, the officer moves the pen horizontally to the limit of the driver's field of vision, and watches the eyes for bouncing at the extremes. In the third part, the "forty-five degree" test, the officer again moves the object from side to side, asking the driver to follow the movement with his eyes. The officer watches for the onset of the nystagmus prior to a forty-five degree angle between

---

[1]In the event that the proponent of the scientific evidence fails to show its "general acceptance" in the relevant scientific community, evidence of general acceptance nonetheless remains a factor for the court to consider in its determination of the reliability of the scientific evidence. See *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 594 (1993).

the driver's nose and the position of the object.[2] The underlying theory is that there is a strong correlation between the degree of a person's intoxication and the angle at which the person's eyes begin to exhibit evidence of nystagmus. See generally *Merritt, supra* at 80-85. Intoxicants, such as alcohol, interrupt various tracking and focusing functions of the retina which can be observed through a series of simple tests. See *People* v. *Quinn,* 153 Misc. 2d 139, 141 (N.Y. Dist. Ct. 1991), rev'd on other grounds, 158 Misc. 2d 1015 (N.Y. Sup. Ct. 1993).

Courts generally have admitted evidence of the HGN test. The dispute concerning the HGN test is whether it is a proper subject for expert testimony or simply a field sobriety test which does not require expert testimony. The majority of courts which have addressed this issue have concluded that the HGN test is based on an underlying scientific proposition, requiring the proponent to meet the test for scientific evidence prior to admission of the HGN evidence. The following States have admitted the HGN test results under the *Frye* (*Fatalo*) standard, the *Daubert* standard, or a rule analogous to Fed. R. Evid. 702. See, e.g., *State* v. *Superior Court,* 149 Ariz. 269, 280 (1986); *People* v. *Leahy,* 8 Cal. 4th 587 (1994)[3]; *State* v. *Gleason,* 123 Idaho 62, 65 (1992); *People* v. *Buening,* 229 Ill. App. 3d 538, 545-546 (1992); *State* v. *Witte,* 251 Kan. 313, 329-330 (1992); *State* v. *Armstrong,* 561 So. 2d 883, 885 (La. Ct. App. 1990); *State* v. *Hill,* 865 S.W.2d 702, 703-704 (Mo. Ct. App. 1993); *State* v. *Clark,* 234 Mont. 222, 226-227 (1988); *State* v. *Borchardt,* 224 Neb. 47, 58 (1986); *People* v. *Erickson,* 156 A.D.2d 760 (N.Y. 1989); *Fargo* v. *McLaughlin,* 512 N.W.2d 700, 705-707 (N.D. 1994); *Yell* v. *State,* 856 P.2d 996 (Okla. Crim. App. 1993); *State* v. *O'Key,* 321 Or. 285 (1995); *Commonwealth* v. *Moore,* 430 Pa. Super. 525 (1993); *Emerson* v. *State,* 880 S.W.2d 759, 763 (Tex.

---

[2]The above description of the mechanics of the HGN test was based on the testimony of Trooper Murphy in this case. Trooper Murphy further testified that he had administered the HGN test to the defendant that night, and that the defendant failed all three parts of the test.

[3]The Supreme Court of California wrote in *People* v. *Leahy,* 8 Cal. 4th 587, 606 (1994), "[T]he principal obstacle to the admissibility of the horizontal gaze nystagmus test may be its pretentiously scientific name," leading the court to conclude that, "a jury might be unduly swayed by HGN evidence solely by reason of its technical nomenclature."

Crim. App.), cert. denied, 513 U.S. 931 (1994).[4] Among those jurisdictions that allow the admission of HGN evidence under either the *Frye* or the *Daubert* test or a rule, the courts generally restrict the use of HGN testing to establish the threshold condition of intoxication, but not the specific degree of intoxication. See, e.g., *Merritt, supra* at 90.[5] We conclude that the HGN test relies on an underlying scientific proposition and therefore expert testimony is required.

The mechanics of the HGN test contrast distinctly from those of ordinary field sobriety tests. These tests measure a person's sense of balance, coordination, and acuity of mind in understanding and following simple instructions. A lay juror understands that intoxication leads to diminished balance, coordination, and mental acuity from common experience and knowledge. The testimony of the result of an HGN test relies on an underlying assumption that there is a strong correlation between intoxication and nystagmus. That underlying assumption is not within the common experience of jurors. Thus, before such evidence is allowed to be heard by jurors, there must be an evidentiary foundation in satisfaction of the *Lanigan* standard.

Further, there must be a determination as to the qualification of the individual administering the HGN test and the appropriate procedure to be followed if the HGN test results are to be admitted at trial. The defendant objected to the officer's qualifications. Consistent with the judge's view that the HGN test was simply another field sobriety test, the judge overruled the objection without a hearing on the officer's qualifications. An expert's qualifications are for the trial judge. *Commonwealth* v. *Boyd*, 367 Mass. 169, 182 (1975), and cases cited. The judge permitted the witness to testify to the HGN

---

[4]A few courts have concluded that the HGN test does not involve a scientific theory, obviating the need for the application of the State's scientific evidence admission requirement. See, e.g., *State* v. *Bresson*, 51 Ohio St. 3d 123, 129 (1990) ("HGN test cannot be compared to other scientific tests, such as the polygraph examination, since no special equipment is required"); *State* v. *Murphy*, 451 N.W.2d 154, 158 (Iowa 1990) ("ease with which the test may be administered and evaluated obviates the need for a more scientific interpretation").

[5]For an extensive listing, breakdown and analysis of the various approaches taken by State courts on the admissibility of HGN test evidence, see *Merritt, supra* at 86-90; *Fargo* v. *McLaughlin*, 512 N.W.2d 700 (N.D. 1994).

test which implies a finding the expert is qualified. *Id.* at 183. However, the judge did not give the defendant an opportunity to challenge the officer's qualifications and the procedures used in administering the test before admitting the results of the HGN tests. Thus, a new trial is required.

3. *Admission of the defendant's statement.* Relying on G. L. c. 90, § 24 (1) (*e*), the defendant asserts that it was error to admit his statement, "I'm not drunk, but I'm over," in evidence.[6] We do not agree. The prohibition of G. L. c. 90, § 24 (1) (*e*), is applicable only on the issue of the defendant's consent to taking a breathalyzer test. The record reveals that there was never any mention of the breathalyzer test throughout the trial. The defendant's reliance on the statute is misplaced.

Further, the defendant's claim that his voluntary admission violates art. 12 of the Massachusetts Declaration of Rights is without record support. There was no evidence that the defendant did not voluntarily furnish the communication that he was over the legal limit of intoxication, and there was no "Catch-22" situation compelling him to furnish evidence. The defendant merely had to say, "No" to withhold consent to taking the breathalyzer test, but instead, he blurted-out that he was intoxicated beyond the legal limit.[7]

---

[6]General Laws c. 90, § 24 (1) (*e*), states in relevant part: "Evidence that the defendant failed or refused to consent to such [breathalyzer] test or analysis shall not be admissible against him in a civil or criminal proceeding."

[7]The defendant also argues that the admission of the statement precluded him from thoroughly cross-examining Trooper Murphy because such a cross-examination would have resulted in the admission of additional testimony regarding the breathalyzer test that would have been prejudicial against the defendant. We reject this argument. The right to cross-examination is not absolute. *Commonwealth* v. *Doherty*, 394 Mass. 341, 349-350 (1985). In *Doherty*, we wrote that it is "within the judge's discretion to limit the questioning," so long as the defendant was accorded reasonable opportunity for cross-examination. *Id.* at 349. But see *Commonwealth* v. *Martinez*, 384 Mass. 377, 380 (1981). In this case, the defendant had a full and fair opportunity to cross-examine Trooper Murphy and chose to avoid extensive questioning on the circumstances of the defendant's statement in relation to the breathalyzer test, as a matter of trial strategy. While art. 12 guarantees a defendant the right to confront witnesses against him, it does not guarantee that the results of cross-examination will be entirely favorable to the defendant.

The order denying the defendant's motion for a new trial is vacated. The judgment is reversed, the verdict is set aside, and the case is remanded to the District Court for a new trial.

*So ordered.*