Tucker, Richard T., J.
This matter came on before the court upon the defendant, Dennis H. Rapa, M.D.’s motion to preclude expert testimony of Joseph Dineen, M.D. and Stephen Valenstein, M.D. Both Dr. Dineen and Dr. Valenstein have been disclosed as experts anticipated to testify at trial on behalf of the plaintiff in this medical negligence action. The defendant submits that the doctors’ opinions as to deviation from the applicable standard of care are inaccurate, and are not based on theories accepted in the medical community and lack a sufficient factual basis. As such defendant argues that the opinions of these experts do not meet the Daubert/Lanigan standard for admissibility.
After a hearing held on October 13, 2011 and a careful review of the submissions of counsel, I find and rule as follows.
APPLICABLE STANDARDS
In Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993), the United States Supreme Court announced the test to govern admissibility in Federal Courts of expert testimony “based on scientific, technical, and other specialized knowledge.” While recognizing the pre-Daubert test as set forth in Frye v. United States, 293 F. 2013 (D.C. Cir. 1923), which requires that the theory and methodology in question of any expert witness be “generally accepted by a relevant scientific community,” the Frye standard was found to be, in Daubert, as simply one, non-exclusive factor in determining admissibility.
In Commonwealth v. Lanigan, 419 Mass. 15 (1994), our Supreme Judicial Court indicated that the general acceptance in the relevant scientific community standard remains as a significant factor in governing the admissibility of expert testimony, but indicated that it would no longer be the sole test in Massachusetts. Lanigan and its progeny has made clear that a party seeking to introduce expert scientific evidence may establish a foundation “by showing that the underlying scientific theory is generally accepted within the relevant scientific community, or by showing the theory is reliable or valid through other means.” (Emphasis original.) Commonwealth v. Patterson, 445 Mass. 626, 640-41 (2005), citing Commonwealth v. Sands, 424 Mass. 184, 185-86 (1997). Five factors have emerged from the progeny of Daubert/Lanigan for determining the admissibility of expert testimony within the common law: (1) general acceptance of theory and methodology within the relevant community; (2) whether the theory has been tested or can be tested; (3) whether the theory has been subject to peer review or publication; (4) whether studies have established a known or potential error rate of the methodology; and (5) whether standards exist to measure the methodology and conclusions therefrom. Commonwealth v. Patterson, 445 Mass. at 649-54. All of these standards need not be met for admissibility and in the “rapidly developing field [where] new understanding may be expected as more studies and tests are conducted” the Daubert/Lanigan reliability test will be met by demonstration of the validity of the underlying scientific theory or process or by some other means . . ." Commonwealth v. Lanigan, 419 Mass. at 26-27.
*246 RELEVANT FACTS
The deceased plaintiff, Collin Perro, came under the care of his primary care physician, the defendant Dr. Dennis Rapa, from 1992 to the date of Mr. Perro’s death on September 13, 2004. Mr. Perro’s medical history is significant for testicular cancer in 1984 for which he underwent a right radical orchiectomy. The autopsy report of Mr. Perro references a mass that had been previously identified in Mr. Perro’s right upper lobe which was similar to the right upper lobe mass present at his death.
While under the care of Dr. Rapa, Mr. Perro was treated for hypertension, and heart disease as well as intermittent upper respiratory tract infections. It was known that Mr. Perro smoked cigarettes during his lifetime. Mr. Perro’s medical records do not indicate that he underwent any chest x-rays or other chest scans until July of 2004 when, Mr. Perro’s lung mass of 5 to 6 centimeters was noted.
Following the discovery of this mass and after a bronchoscopy, mediastinoscopy and biopsies performed on July 20, 2004, metastatic carcinoma of this right upper lung was confirmed.
Mr. Perro returned to his home on September 13, 2004 having been discharged without radiation or chemotherapy having yet been commenced. Mr. Perro died suddenly at his home on the date of discharge. An autopsy confirmed widespread metastasis from his lung cancer. The autopsy also revealed marked coronary systemic atherosclerosis with cardiomegaly. Additionally the autopsy revealed evidence of a possible remote myocardial infarction. The pathologist, Dr. Magano, concluded that “[g]iven the marked atherosclerosis and the prior cardiac injury, an acute myocardial infarction is a likely cause of [the decedent’s] sudden death.”
DISCUSSION
Defendant’s primary argument is set forth in his memorandum as follows: “There is simply no support, scientifically or otherwise, to suggest that the standard of care between 1992 and 2004 required a physician to perform preventative screening for lung cancer in asymptomatic patients.” Whether or not this statement is correct, it is founded on an incorrect premise that Mr. Perro was an “asymptomatic patient.” Plaintiffs expert opinions, however, are premised on symptoms revealed by Mr. Perro during this period and during his lifetime. Dr. Dineen states that “Mr. Perro’s history of heart disease, hypertension, intermittent respiratory infections, his previous testicular cancer, the presence of a mass all required his lungs to be followed closely.” Defendant’s claim that the standard of care for asymptomatic patients was met by the defendant, based upon permissible factual findings of the jury, appears to miss the point.
Defendant also argues that Dr. Dineen’s and Dr. Valenstein’s reliance, at least in part, on the reference in the autopsy report of an upper right lung mass identified in 1991, is misplaced as there is no evidence that there was such a mass. In support of this position, defendant points out that no films of this mass exist, no medical records of such x-rays being performed exist and no mention of this finding was ever made in any medical record from 1991 until it was mentioned in the autopsy report. Although this appears to be fairly substantial evidence against the existence of such a finding in 1991, it does not negate that there does exist some evidence of it in the autopsy report. Moreover, the pathologist who performed the autopsy has stated under oath that he was informed of this finding by a physician, likely the defendant, prior to performing the autopsy. Of course the existence or non-existence of a prior lung mass is a matter of fact for determination by the juiy. The fact that there is such a dispute does not affect the admissibility of this evidence. It may be admitted and challenged through cross examination.[1]
The proffered opinions of plaintiffs experts are based upon facts that are not in dispute. These opinions have abasis in fact which, I find, provide a reliable basis for their admission.
ORDER
The defendant, Dennis H. Rapa, M.D.’s motion to preclude the testimony of Drs. Joseph Dineen, M.D. and Stephen Valenstein, M.D. is DENIED.

The defendant also claims that the anticipated opinions regarding causation are similiarly not reliable or admissible. Both Dr. Valenstein and Dr. Dineen opine that earlier recognition of Mr. Perro’s cancer would have resulted in earlier treatment and that the delayed diagnosis caused Mr. Perro’s prolonged pain and eventual death. The defendant argues that, since the pathologist found the cause of death to be most probably a result of an acute myocardial infarction, the experts cannot hold a differing opinion. I don’t agree. The opinions of the pathologist and all experts are admissible, stand on their own and are subject to cross examination.