Kane, Robert J., J.
The Commonwealth asks the court to reverse its ruling severing Carmelo Kercado’s trial from the trial of Tfyrell Baptiste and Reggie Greene. All three defendants face indictments charging them with first degree murder. According to the Commonwealth’s theoiy, the three defendants, acting together as joint venturers, murdered Anthony Samedo on June 18, 2006 in the city of New Bedford. The killing of Samedo was purportedly motivated by the group’s desire to retaliate for the shootings of Justin Barry and John Burgos, members of the Gangsta Disciples operating out of the United Front Housing Development. It is posited by the Commonwealth that this retaliatory shooting of Samedo, who was thought to be Minute Silva, had its origins in the historical feuds between the United Front Group and the Monte Park Group.
Persuaded that the evidence would establish Greene and Baptiste’s membership in the United Front gang, known as the Gangsta Disciples and the gang’s desire to retaliate against Silva for the shootings of Barry and Burgos, the court consolidated the trials of Greene and Baptiste. The court severed Kercado’s trial because the Commonwealth’s proffer had failed to establish his proximate membership in the United Front Group and his awareness or belief about Minute Silva’s role in the Burgos and Barry shootings.
COMMONWEALTH’S MOTION
On March 31, 2014, the Commonwealth submitted ' papers in support of its argument that four officers attached to the New Bedford Police Department could offer opinions on the violent relations existing in 2006 between the United Front Group and the Monte Park Group, and Kercado’s membership in the “United Front Group.” The court now examines closely the papers that support the proposed opinion evidence. The papers consisted of: (1) the resumes of Detective David Conceicao and Detective David Brown; (2) a two-page report authored by Sergeant Scott Morton; (3) a two-page gang intelligence report authored by Conceicao; and (5) assorted “reference materials,” including internal security documents prepared by personnel attached to the Bristol County Sheriffs Department and Grand Juiy Minutes.
The documents directly relevant to Kercado’s membership in the “United Front Group” consisted of Morton and Conceicao’s reports. Morton, in his report, recited his patrol activities starting in 2004 that included the United Front Housing Development and his subsequent work as a detective that included investigating conflicts between the United Front and Monte Park Groups. In investigating these acts of violence and other crimes, Morton learned of the United Front Group’s involvement with guns and drugs; as to who belonged to the groups, Morton conceded that the membership fluctuated. He failed to offer any opinion or commentary about Kercado’s involvement in the United Front Group.
Conceicao’s report centered on the arrest of Kercado, John Burgos, and Justin Sebastian on July 17, 2006. The arrests occurred in Roxbuiy and were based on the arresting officer’s belief that the three men had been planning a home invasion. Kercado was incidentally arrested for possession of a .45 magnum pistol that had been found by the police in the area where Kercado had attempted to flee. After Sebastian’s arrest, the police searched his car, finding Percocet pills, ammunition and $753. On September 6, 2006, Burgos had been observed by Conceicao in Sebastian’s vehicle.
Giving “four points” for Sebastian’s arrest with Burgos and four points for Sebastian’s prior association with Burgos, a known member of the Gangsta Disciples, Conceicao “validated” Sebastian’s membership in the Gangsta Disciples.
Giving Kercado “eight points” for the Bristol County Sheriffs Department’s classification of him as a Gangsta Disciple[1] and four points for Kercado’s arrest with Burgos, Conceicao “validated” Kercado as a Gangsta Disciple member.
According to the Sheriff Department’s gang classification system[2] Kercado received 27 points. Inspec *285 tion of the classification sheets revealed that the 27 points accrued from the following: (1) nine points on the basis of a report from an outside law enforcement/criminal justice agency with the supposedly attached report missing; (2) five points because of the alleged but undocumented news report; and (3) other points on the basis of generic criteria.
SUPPLEMENTARY INFORMATION
The court also possesses a one-page report by Julio DeFigueiredo, an investigator attached to the Bristol County Sheriff Department. In that report, DeFigueirido documented the following facts relied upon for the Sheriff Department’s classification of Kercado as a gang member: (1) Kercado’s possession of a firearm in the area of Tremont and Maple Streets in New Bedford that the United Front Gang claims; (2) Kercado’s association with members of the United Front gang; and (3) Kercado’s telephone conversation where he referred to the United Front gang, and to Barry and William Payne, considered to be gang members, and reported that Payne and a Kiana Canto would “make money” to bail him.[3]
DEFENDANT’S OBJECTIONS
Defendant lodges numerous objections to the opinion testimony’s factual and scientific foundations. He characterizes the underlying information as incomplete, unreliable and misleading. Claiming the evidence of defendant’s gang membership falls under Dauberts scientific regimen, he contends that the proposed opinion testimony fails to satisfy Dauberts scientific scrutiny. See Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579 (1993). According to Kercado, the proposed gang membership opinion testimony fails to pass any of the four non-exclusive tests set forth in Daubert.
DISCUSSION
Gang evidence must be carefully considered. It possesses potential to cast a defendant in a light inhospitable to fair trial rights. Commonwealth v. Gray, 463 Mass. 731, 756-57 (2012); Commonwealth v. Smith, 450 Mass. 395, 400 (2008); Commonwealth v. Swafford, 441 Mass. 329, 332-33 (2004); Commonwealth v. Maldonado, 429 Mass. 502, 505 (1999).
Its admission requires as an initial matter a showing that it provides information relevant to the case at hand. Swofford, at 329. Admittedly, Kercado’s purposeful operation of the motor vehicle while Baptiste pursued and shot Silva provides evidence of his participation in a lethal joint venture. The Commonwealth, however, to prove first degree murder by deliberate premeditation must prove an intent to kill, rather than an intent to wound or frighten. Proof of defendant’s affiliation with the Gangsta Disciples, a group that followed a military regimen and used firearms to secure their ends, which included retaliation, would constitute strong evidence of the defendant’s intent and motive.
Admitting an opinion on gang membership and the gang’s relationship with a rival gang rather than the underlying facts serves the interest of introducing relevant evidence without presenting background information that will either cause undue prejudice or distract the jury’s attention from the issues to be decided. Because of its evidentiary framework, opinion testimony allows for introduction of the opinions on gang membership and inter-gang conflicts on direct without mention of the underlying facts. Commonwealth v. Barbosa, 457 Mass. 773, 784 (2010). Omission of the underlying facts accomplishes the objective of keeping the jury’s attention on facts probative of the defendant’s involvement in the indicted offense. Where defense counsel deems it prudent, counsel can secure relevant impeachment material by examining the witness on the basis of the opinions on the defendant’s membership in the gang and gang conflicts and motivations.
NECESSARY
The proposed opinion testimony must address a matter beyond lay understanding. Here, the Commonwealth lacks any direct evidence that Kercado was a Gangsta Disciple member. Apparently, the Commonwealth lacks any witness, including its chief witness Randy Torres, a witness to the shooting, prepared to assign to Kercado words indicating his proximate membership in the Gangsta Disciples. It must instead rely on circumstances whose full implications would elude lay understanding.
RELIABILITY
Defendant urges this court to apply one or more of the Daubert tests to the Commonwealth’s proposed opinion testimony. Little in the cases issued by the Massachusetts appellate courts support the proposition that the scientific tests endorsed in Daubert and followed with qualifications in Commonwealth v. Lanigan, 419 Mass. 15, 25-27 (1999), apply to a police official’s opinions on gang membership.
In Canavan’s Case, 432 Mass. 304 (2000), the court, in discussing application of the scientific tests set out in Lanigan, 419 Mass, at 15, used the terms “scientific evidence” and “scientific experts’ opinion.” In his concurrence in Canavan, Judge Greaney differentiated the case before that court as one involving “hard science,” as compared to other cases involving the “so-called soft sciences.” Canavan’s Case, 432 Mass. at 317-18.
Where the theory underlying expert testimony lends itself to lay understanding, then the scientific evaluation prescribed in Daubert fails to apply. Commonwealth v. Sands, 424 Mass. 184, 185-89 (1997). As observed in Sands, “If jurors can evaluate an expert’s testimony with common sense and experience and can understand the underlying methods or theories of the testimony, then . . . the logical basis of the testimony can be effectively tested through cross-examination *286 and rebuttal evidence.” Id. at 186. Where the expert’s opinion lacks a foothold in “scientific theory or research” but rather relies on a honed awareness of how a group practices its craft or enterprise such testimony “need not be subject to a Daubert/Lanigan analysis.” Palandjian v. Foster, 446 Mass. 100, 106-09 (2006); Commonwealth v. Goodman, 54 Mass.App.Ct. 385, 386-91 (2002).
Even if Daubert/Lanigan applies, Massachusetts and federal cases converge in endorsing a trial court’s authority to apply the Daubeit evaluation of reliability flexibly. United States v. Taylor, 2009 U.S.Dist. Lexis 100318 (D.N.M. 2009); United States v. Monteiro, 407 F.Sup.2d 351 (D.Mass. 2006). This endorsement of flexibility particularly applies where the expert relies on professional experience in formulating the opinion. As stated in Taylor, “Many courts have recognized that the list of factors the Supreme Court outlined in Daubert ‘may not perfectly fit every type of expert testimony, particularly technical testimony based primarily on the training and experience of the expert.’ ” Id. at *7, citing Monteiro, 407 F.Sup.2d at 357. In evaluating the reliability of a warden’s opinion on prison gangs, the Taylor court observed that, “to evaluate the reliability of [the warden’s] testimony by the same standards that would be applied to the testimony of a laboratory scientist simply would not make any sense.” Id. at *11.
In Lanigan and Canavan’s Case, the Supreme Judicial Court failed to require the trial judge to follow a particular approach in assessing “scientific evidence.” Rather, the Court emphasized the trial judge’s discretion in devising a method for testing a scientific theory’s reliability. Canavan’s Case, 432 Mass at 311-12.
MASSACHUSETTS CASES ON GANG EVIDENCE
Our appellate courts have yet to comprehensively address what requirements apply to admission of an opinion of a defendant’s gang membership. See Smith, 450 Mass. 395; Commonwealth v. Wolcott, 28 Mass.App.Ct. 200 (1990). In Wolcott, the court treated the testimony on gang membership as lay testimony that ought not to have been admitted, but the court provided guidance on the dangers posed by evidence only establishing a thin association with a gang. Where the evidence only presents ambiguous associations between the defendant and the gang, it amounts to “a memorable example of the vagaries, circularity and dangers of trying to prove some guilt by association.” Id. at 208; see also Commonwealth v. Ortega, 441 Mass. 170, 180 (2004); Scales v. United States, 367 U.S. 203, 224-25 (1961).
In Smith, the defendant objected to the admission of evidence of his gang membership on the grounds of lack of relevancy. The court stated that any erroneous admission of gang affiliation evidence was harmless. In Smith, the evidence of gang affiliation came from a number of sources, including the expert witness’s frequent visits to Columbia Point, where he came to know who belonged, during the relevant time period, to the gang known as the “Columbia Point Dawgs.” He identified the defendant as a member of the Columbia Point Dawgs. A Columbia Point resident also identified the defendant as a member of the Columbia Point Dawgs.
No Massachusetts appellate decision has fully addressed the admissibility of opinion testimony on a defendant’s gang membership. The gap necessitates review of other jurisdiction’s views.
In State v. DeShay, 669 N.W.2d 878 (2003), the court reviewed a ten-point criteria for determining gang membership developed by the Criminal Gang Oversight Counsel composed of the Commissioners of Public Safety and Correction, the Superintendent of the Bureau of Crime Apprehension, the Attorney General and several police chiefs, sheriffs, and other law enforcement officers.[4]
The criteria came from criteria used in the West Coast[5] and areas of the Midwest. It consisted of the following:
(1) admits gang membership or associations;
(2) is observed to associate on a regular basis with known gang members;
(3) has tattoos indicating gang membership;
(4) wears gang symbols to identify with a specific gang;
(5) is in a photograph with known gang members and/or using gang-related hand signs;
(6) name is on a gang document, hit list or gang-related graffiti;
(7) is identified as a gang member by a reliable source;
(8) arrested in the company of identified gang members or associates;
(9) corresponds with known gang members or writes and/or receives correspondence about gang activities; and
(10) writes about gangs which would be graffiti on walls, books and/or paper.
The opinion testimony came from Scott Jenkins, attached to the Minnesota Gang Task Force. Jenkins, trained in gang behaviors, investigated the gang involved in the case before the court. Although he hadn’t gathered the information underlying the analysis of the defendant’s membership in the gang, he had gathered considerable information about the gang based on a review of official documents and fieldwork.[6]
The DeShay court noted the dangers of admitting gang evidence. It cautioned against admission of unnecessary evidence regarding gang activities. It endorsed the practice of scrutinizing the evidence’s *287 reliability and scope “preferably outside the presence of the jury.”
MASSACHUSETTS PRECEDENTS
Our appellate courts have allowed opinion testimony from law enforcement officials on such matters as code words and modus operandi. Commonwealth v. Rosa, 468 Mass. 231, 240 (2014) (“expert testimony is useful where speakers engage in coded conversation or speak about a subject using specialized vocabulary”); Commonwealth v. Pike, 430 Mass. 317, 324 (1999) (‘Testimony about [drug diversion] operations ... is helpful to the fact finders and is admissible [because] it is more akin to a description of the modus operandi of [drug diverters] than a ‘profile’ of a drug dealer”); Commonwealth v. Johnson, 410 Mass. 199, 202 (1991); see also Commonwealth v. Grissett, 66 Mass.App.Ct. 454, 457-59 (2006). Admission has been conditioned upon a showing of the officer’s specialized knowledge and experience in the area, for example, of drug sales, and the evidence has been confined to a construct of activities that are consistent with the particular modus operandi or criminal intent.
Here, the evidence would exceed an opinion on modus operandi or what characteristics coincide with a particular gang. The evidence instead would present an opinion on this defendant’s membership in the Gangsta Disciples operating out of the United Front housing development. An opinion as opposed to a description of activities consistent with a criminal modus operandi requires a deeper understanding of the particular subject matter. See McCormick on Evidence Seventh Edition Volume 1 §13, pgs 107-10.
To be admissible, such evidence must come from a law enforcement official knowledgeable about the Gangsta Disciples in the proximate period of July 18, 2006. That law enforcement official would need to have studied the gang’s purposes, structures, methods of operation, rules, symbols and membership.[7]
Based on that predicate foundation, the witness would have to present criteria for determining the identity of members, with the criteria endorsed by the court as rehable. The underlying information would have to satisfy standards set out in Commonwealth v. The Department of Youth Services, 398 Mass. 516 (1986). Finally, the hearing would need to occur before trial and, if during trial, outside the presence of the jury. In reviewing the admissibility of such opinion testimony, the court would follow the reasoning as set forth in DeShay that every effort should be expended to ensure that only necessary information comes before the jury.
FILING REQUIREMENTS
Based on the above analysis, the court requires the Commonwealth to file within the next 21 days the following: (1) the identity of its expert and its qualifications to present an opinion on Kercado’s membership in the Gangsta Disciples; and (2) the criteria relied upon in rendering this opinion; for each criterion, the proposed witness will explain how it reliably relates to the opinion on gang membership.[8]
Within ten days of the Commonwealth’s filing the defendant must respond by filing a brief and or affidavits in opposition to the Commonwealth’s proffer. At that time the Court will schedule a hearing. No later than 21 days prior to the hearing, both sides must submit proffers of evidence. Each proposed witness’s testimony must be summarized with a clear explanation of its materiality. The court retains the right to assemble a factual record in accordance with the procedures set forth in Massachusetts Guide to Evidence 104(a) ed. 2014.

The Bristol County Sheriff Department’s purpose and approach in classifying gang members differs markedly from the court’s purpose and procedure for reviewing expert testimony on gang membership. This memorandum is not intended to make any evaluation of the gang classification procedure followed by the Sheriffs Department in furtherance of its duties to maintain a safe environment. Nor does the court intend to guide the police on how to classify gang members for purposes of developing intelligence on gang activities or ensuring officers’ safety.

The Bristol County Sheriffs Department gang criteria consists of the following: (1) self admission by inmate; (2) information received from outside law enforcement/criminal justice agency; (3) use and possession of group paraphernalia or identifiers; (4) group related photo; (5) known group tattoo or marking; (6) information from reliable/confidential informants; (7) victims/targets affiliated with members of rival group; (8) possession of documents; (9) named in documents as member or associate; (10) possession of publications; (11) participation in publications; (12) court documents; (13) published news accounts; (14) contact with known associates; (15) observed association; (16) membership documents; and (17) information developed during investigation or surveillance.

The Commonwealth’s reconsideration motion also includes excerpts from intercepted jailhouse telephone calls. Details on the transcription’s origins and completeness are lacking.

Other municipalities have developed criteria for determining gang membership. In the city of Portland, Oregon, the police consider the following as criteria of gang membership: (1) the individual admits or asserts affiliation with a gang; (2) a reliable informant has identified an individual as a gang affiliate; (3) the individual displays clothes, jewelry, hand signs and/or tattoos unique to gang affiliation, with clothing color alone insufficient for designation; (4) a law enforcement agency including out-of-state or federal agencies has identified an individual as affiliated with a gang; (5) an individual is present with an identified gang affiliate involved in suspected criminal behavior during the commission of a crime; and (6) the individual conspires to commit or commits crimes against persons or property based on race, color, religion, sexual preference, national origin or rival gang association. Mayer, Jeffrey. Individual Moral Responsibility and the Criminalization of Youth Gangs, 28 Wake Forest L. Rev. 943 (1993).

California, through the development of regulations establishes how gang membership is determined. The regulations identify criteria, establish indicia of reliability for applying the criteria and describe the qualifications of the expert witness. Ellis v. Cambra, 2010 WL 4137158 (E.D.Cal. 2010).

On review, the court observed that the criteria in one instance overlapped. One criterion involved an association on *288 a regular basis with a known gang member, and another criterion involved being arrested in the company of “identified gang members.” While the two overlap, the two differ, with one involving regular association with other members of a gang, and the second involving association with a known gang member in the context of an arrest.

Evidence of gang membership must be derived from knowledge of the particular gang. The term gang has many meanings with some overinclusive. See Spergel, Irving. Youth Gangs: Problem and Response. University of Chicago, p. 9-11 (definitions in use have varied according to the perceptions and interests of the definer, academic fashions, and the changing social reality of the gang); Modern Dictionary for the Legal Profession Third Edition, 2001 (“opponents of gang profiling claim that law enforcement officials harass innocent minority, young men because the definitions are insufficiently specific”).

The filings must be carefully indexed to conform with the court’s specific requirements and attachments must be complete and conformable with the index. Any material failure to follow the instructions will result in a ruling that the filing is procedurally defective.